UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOWER CROSSING CONDIMINIUM ASSOCIATION, INC., ) ) ) ) Plaintiff, ) ) v. ) ) AFFILIATED FM INSURANCE ) COMPANY ) ) Defendant. ) | Case No. 21-CV-06228 Judge John Robert Blakey |

### MEMORANDUM OPINION AND ORDER

In this insurance contract dispute, Tower Crossing Condominium Association sues its insurer, Affiliated FM Insurance Company (AFM), for breach of contract and bad faith claim denial in violation of 215 ILCS 5/155. [1]. AFM moves to dismiss Tower Crossing's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), [13], arguing that the breach of contract claim is time-barred and the Complaint fails to allege any vexatious or unreasonable conduct to support a bad faith denial claim. For the reasons stated below, the Court denies AFM's motion [13].

I.   **Factual Allegations**[1]

Plaintiff Tower Crossing Condominium Association ("Tower Crossing"), an Illinois condominium association, owns the common areas including the roofs and

---

[1] The Court draws the following facts from the Amended Complaint [11] and the exhibits attached, thereto, which it accepts as true for purposes of the motion to dismiss. *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015).

1

"exterior envelope" of a twenty-seven-building complex in Glenview, Illinois (the "Property"). [11] ¶¶ 1, 6. To insure against property damage and loss to the Property, Tower Crossing purchased a replacement cost All Risk Coverage property damage policy with Defendant Affiliated FM Insurance Company ("AFM"), effective May 1, 2018 to May 1, 2020 (the "Policy"). *Id*. ¶ 7; [11-1].

In the event of damage or loss to the Property, the Policy required Tower Crossing to give AFM a "signed and sworn proof of loss" within 90 days of the loss. [11-1] at 47. The Policy also provided that Tower Crossing may not sue AFM to recover on a claim unless: (1) Tower Crossing "has fully complied with all terms and conditions of the policy"; and (2) the lawsuit "is initiated within two years after the date on which the direct physical loss or damage first commenced or occurred, extended by the number of days between the date the proof of loss was filed until the date the claim is denied in whole or in part." *Id*. at 67. The proof of loss tolling language derives from the Illinois Insurance Code, which states: "Whenever any policy or contract for insurance contains a provision limiting the period within which the insured may bring suit, the running of such period is tolled from the date proof of loss is filed, in whatever form is required by the policy, until the date the claim is denied in whole or in part." 215 ILCS 5/143.1.

On July 2, 2019, a hailstorm and wind severely damaged the Property. [11] ¶¶ 6, 8. Tower Crossing filed a claim under the Policy and, in response, AFM hired Roofing Consultants, Ltd. ("RCL") to investigate. *Id*. ¶ 9. RCL issued a report finding that hail had damaged the complex's metal roof vents, and wind had damaged some

of the roof. *Id.* And AFM then retained Newman Construction Consulting ("Newman"), which estimated repairs would cost $203,982.19. *Id.* ¶ 10. AFM provided RCL's report and Newman's estimate to Tower Crossing on October 23, 2020. *Id.* ¶ 11.

On March 17, 2021, Tower Crossing notified AFM that it disagreed with the RCL report and Newman's estimate and had hired its own expert, Matthew Dupuis, to conduct an independent investigation. *Id.* ¶¶ 15–16. Tower Crossing also asked AFM for an extension of the Policy's two-year limitation period while Dupois investigated. *Id.* On July 1, 2021, AFM's adjuster Sean Taylor responded to Tower Crossing, agreeing to a limitation extension until October 2, 2021. *Id.* ¶ 17.

Dupois issued his report to Tower Crossing on August 23, 2021, concluding that AFM's proposed method of repair "could not be performed in a workmanlike like [*sic*] manner" and would likely further damage the roof shingles rather than repair them. [11-3]. On October 1, 2021—a day before the agreed limitation extension expired—Tower Crossing sent Dupois' report to AFM along with a signed and notarized Proof of Loss ("POL") for $4,341,149.36. [11] ¶ 18; [11-4].

On October 29, 2021, Taylor sent Tower Crossing a letter disagreeing with Dupois' report and "formally rejecting" the POL based upon the RCL report and Newman's estimate. [11] ¶ 21; [11-5]. The letter closed with:

> [If] you find information that differs from the above or if there is additional information that has not been considered in our evaluation of this loss, please contact us promptly, and we will be happy to review any additional information provided. In an effort to try and finalize this matter, I would like to suggest a conference call, including our consultants, to discuss any questions that may remain.

[11-5] at 3. On October 30, 2021, Tower Crossing emailed Taylor requesting that AFM, RCL, and Newman meet at the Property to discuss the matter and test AFM's proposed repairs on a section of the roof. [11] ¶ 25. Taylor responded on November 9, 2021, rejecting both the request to meet and the request to test the repairs. *Id*. Ten days later, on November 19, 2021, Tower Crossing sued. [1]; [11] ¶ 26. On December 2, 2021, while Tower Crossing's lawsuit remained pending, AFM issued a check to Tower Crossing for $193,982.19, indicating in the cover letter that it constituted "final payment" on the claim. [11] ¶¶ 28–29; [11-6].

Tower Crossing's Complaint alleges that AFM breached the Policy by failing to properly investigate, adjust, and pay the claim for all covered damages (Count I). *Id*. ¶¶ 32–33, 35. It also alleges that AFM acted in bad faith and engaged in vexatious and unreasonable claims handling in violation of Illinois Insurance Code 215 ILCS 5/155 (Count II). *Id*. ¶¶ 37–38. Tower Crossing seeks its full POL amount, plus extra-contractual damages and attorneys' fees and costs pursuant to 215 ILCS 5/155. *Id*. ¶¶ 39, 41.

In moving to dismiss pursuant to Rule 12(b)(6), AFM argues that the breach of contract claim fails because Tower Crossing did not file it within the Policy's time limitation. AFM also argues that, without a viable breach of contract claim, the Section 155 claim fails as a matter of law and, regardless, the Complaint also fails to allege any bad faith or vexatious and unreasonable conduct by AFM. *Id*. at 9–15.

## II. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests whether a complaint sufficiently states a claim upon which relief may be granted, not the merits of the case. *See* Fed. R. Civ. P. 12(b)(6); *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012); *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering motions to dismiss, courts "construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in her favor." *Tamayo v. Blagovich*, 526 F.3d 1074, 1081 (7th Cir. 2008). To survive such a motion, the complaint must describe the claim in sufficient detail to put a defendant on notice as to the nature of the claim and its bases, and it must plausibly suggest a right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not allege specific facts, but it may not rest on conclusory statements or empty recitations of elements of causes of actions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Timeliness based upon statute of limitations or contractual time limitations constitutes an affirmative defense. *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008). In general, courts discourage Rule 12(b)(6) motions based upon affirmative defenses "because complaints need not have to anticipate affirmative defenses to survive a motion to dismiss," *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2004), and because affirmative defenses like timeliness often turn on facts developed during discovery, *see Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2021). A court may dismiss a claim based on timeliness,

5

however, if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely." *Andonissamy*, 547 F.3d at 847 (quoting *Lewis*, 411 F.3d at 842).

### III. Analysis

#### A. Timeliness of Breach of Contract Claim

AFM argues that Tower Crossing's breach of contract claim fails as untimely because AFM only agreed to extend the Policy's two-year limitation period until October 2, 2021, yet Tower Crossing did not file suit until November 19, 2021. [13] at 6. AFM acknowledges, *id*. at 7, that the Policy (and Illinois law) extends a limitation period "by the number of days between the date the proof of loss was filed until the date the claim is denied in whole or in part," [11-1] at 67. It argues, however, that Tower Crossing's October 1, 2021 POL did not toll the limitation period because the Policy required a POL within 90 days of the damage, making Tower Crossing's POL untimely and any tolling claim ineffective. [13] at 7–8.

In response, Tower Crossing argues that the Complaint plausibly alleges that AFM waived the Policy's 90-day proof of loss requirement. [15] at 7. And because AFM waived the timing requirement, the October 1, 2021 POL tolled the limitation period. The Court agrees with Tower Crossing, at least based on the facts as alleged.

In Illinois, a policyholder's failure to provide a proof of loss within the time required by a policy may relieve the insurer of liability. *See Tarzian v. W. Bend Mut. Fire Ins. Co.*, 221 N.E.2d 293, 299 (Ill. App. Ct. 1966). An insurer may waive a proof of loss requirement, however, by not enforcing compliance. *Id*. The insurer need not

6

expressly waive the requirement but may waive it by acting inconsistent with it. *Mathis v. Lumbermen's Mutual Casualty Insurance Co.*, 822 N.E.2d 543, 548 (Ill. App. Ct. 2004). Additionally, an insurer may waive the requirement if it otherwise knows of and has sufficient information regarding the nature and extent of the loss. *Lynch v. Mid-America Fire & Marine Ins. Co.*, 418 N.E.2d 421, 428 (Ill. App. Ct. 1981). A court may also estop an insurer from enforcing the POL requirement if, for example, the insurer misleads the insured into reasonably believing that it waived the requirement. *Mathis,* 822 N.E.2d at 548.

Here, AFM's conduct belied any intent to enforce the POL timing requirement. First, after Tower Crossing submitted a claim for the damage, AFM began its own investigation, which it did not complete until October 23, 2020, more than a year after the 90-day POL deadline passed. Nothing in the record suggests that AFM asked Tower Crossing for a POL while it investigated or demanded other information to support the claimed losses. Instead, on October 23, 2020, AFM submitted to Tower Crossing the RCL Report and Newman Estimate setting out the proposed repairs and the cost to compete them. Then, when Tower Crossing disagreed with the proposal, AFM agreed to extend the limitation period until October 2, 2021. Next, and most significantly, AFM did not reject Tower Crossing's October 1, 2021 POL based upon timeliness. It rejected it because it disagreed with Dupois' findings. Further, even after Tower Crossing filed suit, AFM issued a payment on the claim.

These alleged facts plausibly show that AFM waived the POL timing requirement or, alternatively, that AFM is estopped from enforcing it now. *Cf. Hines*

7

*v. Allstate Ins. Co.*, 698 N.E. 2d 1120, 1123 (Ill App. Ct. 1998) (noting that an insurer-defendant who made a payment on a claim for which insured submitted an untimely proof of loss, "conceded that it was estopped by its conduct to assert the policy period of limitations" on the claim). Accordingly, AFM's October 1, 2021 POL—which came one day before the limitation extension expired—tolled the limitation period.

AFM also contends that, even if the October 1, 2021 POL tolled the limitation period (that was set to run on October 2, 2021), the clock started again on October 29, 2021, when it sent the letter to Tower Crossing "rejecting" the POL. [13] at 7. Thus, AFM argues, Tower Crossing's November 19, 2021 complaint remains untimely. *Id.*

In response, Tower Crossing argues that the clock only restarts when an insurer denies "in whole or in part" the claim. It insists that AFM's October 29, 2021 letter did not "deny in whole or in part" its claim. [15] at 11–13. Instead, AFM did not deny the claim until December 2, 2021, when it sent a check with a cover letter indicating that it constituted a "final payment" on the claim. *Id.*

Under the Policy and Illinois law, a POL tolls the limitation period "until the date the claim is denied in whole or in part." [11-1] at 67; 215 ILCS 5/143.1. Here, AFM's October 29, 2021 letter did not explicitly state that AFM had denied Tower Crossing's claim in whole or in part. While it "formally" rejected the POL, it also stated that AFM remained "happy to review any additional information" Tower Crossing may have, and suggested "a conference call, including our consultants, to discuss any questions that may remain." [11-5] at 3. In other words, the letter shows that the parties disagreed on the value of the claim, but it also plausibly suggests

8

AFM's willingness and intention to continue discussions on the amount of the claimed loss. Thus, on its face, the letter does not constitute the firm denial of the claim that AFM asserts here.

For the first time on reply, AFM insists that Tower Crossing's argument "conveniently ignores" several other communications that AFM sent after the October 29, 2021 letter, which establish that AFM had partially denied the claim. [16] at 5; *see also* [16-2]–[16-3] (attaching these communications).

On a motion to dismiss pursuant to Rule 12(b)(6), however, a Court may only consider the Complaint and its exhibits, *Forrest v. Universal Savings Bank, F.A.* 507 F.3d 540, 542 (7th Cir. 2007), and the Complaint does not reference or rely upon the other communications that AFM offers. Thus, the Court cannot consider the additional emails AFM submits unless it converts AFM's motion to one for summary judgment. Fed. R. Civ. P. 12(d). The Court declines to do so, particularly since AFM, by waiting until its reply to submit these materials and make arguments based upon them, deprived Tower Crossing the opportunity to address them.

AFM's reliance on communications outside the complaint illustrates the pitfalls of asserting a limitations defense on a motion to dismiss: a complaint often does not provide a court with what it needs to evaluate the defense. *See Brownmark Films*, 682 F.3d at 690. According, at this preliminary stage, the Court denies AFM's motion to dismiss the breach of contract claim based upon timeliness.[2]

---

[2] Tower Crossing also asserts two alternative arguments. First, it argues that AFM misled it about settling the claim and, thus, AFM should be estopped from enforcing any limitations period. [15] at 8. The Court declines to consider this alternative argument on an undeveloped record. Second, Tower Crossing maintains that AFM's October 29, 2021 letter cannot retrigger the limitations period because

## B. Count II Claim Pursuant to 215 ILCS 5/155

In Count II, Tower Crossing sues AFM for unreasonable and vexatious claims handling pursuant to 215 ILCS 5/155. [11] at 7–8. Section 155 provides that, in disputes over the amount due under a policy or that allege delay in settling a claim, a court may award reasonable attorneys' fees, costs and other fact-specific amounts if an insurer's "action or delay is vexatious or unreasonable." 215 ILCS 5/155.

Initially, AFM argues that, without an underlying breach of contract claim, the Section 155 claim automatically "fails as a matter of law." [13] at 9. Having rejected AFM's arguments as to Count I, the Court rejects this argument as well.

Next, AFM argues that the Complaint fails to assert a plausible Section 155 claim, but instead alleges a bona fide coverage dispute. [13] at 10. AFM insists that the Complaint's allegations of bad-faith and vexatious conduct constitute mere legal conclusions without factual support. *Id.* at 10–11.

As AFM notes, an "insurer's conduct is not vexatious and unreasonable" if "(1) there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a

---

it did not comply with Illinois Admin Code § 919.80(d)(8), which requires an insurer's claims denial to "advise the insured in writing of the number of days the period was tolled, and how many days are left before the expiration to bring suit." [11] ¶ 23; [15] at 12 & n.3. This argument fails as a matter of law because § 919.80(d)(8)(C) only applies to "fire and extended coverage insurance" that "covers real property used principally for residential purposes up to and including a 4 family dwelling." [16] at 6–7 (quoting Illinois Ins. Code § 143.13's definition provision). The Policy here covers a condominium complex with twenty-seven buildings, each with multiple condominium units. Tower Crossing insists that the Policy here qualifies because each unit in the complex constitutes a "dwelling", and each unit only houses a single family. [15] at 12 n.3. This tortured reading of the statute renders superfluous the "up to and including a 4 family dwelling" language and, not surprisingly, Tower Crossing offers no support for it. Instead, a natural reading of § 919.80(d)(8)(C) shows that it does not apply to the Policy here.

10

genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th Cir. 2000). Instead, an insurer only acts vexatiously and unreasonably when its "behavior was willful and without reasonable cause." *Id.* Overall, claims that an insurer engaged in vexatious and unreasonable claims handing turn on the totality of the circumstances. *Smith v. Equitable Life Assurance Soc'y of the United States*, 67 F.3d 611, 618 (7th Cir. 1995).

Here, the Complaint alleges that AFM engaged in vexatious and unreasonable conduct by: (a) "low-balling" a settlement amount with intent to deprive Tower Crossing of the value of its claim; (b) refusing to conduct a test repair without justification; (c) unreasonably suggesting that the roof shingles remained repairable; and (d) unreasonably waiting more than a year to issue a partial payment on the claim. *Id.* ¶ 38. Contrary to AFM's contention, these allegations do not constitute legal conclusions without factual support; rather, the Complaint describes the alleged acts demonstrating vexatious and unreasonable conduct. Although AFM insists that it had legitimate or bona fide reasons for acting as it did, the Complaint's allegations plausibly suggest a right to relief. The Complaint need do nothing more. *Twombly*, 550 U.S. at 555.

11

## IV. Conclusion

For the reasons explained above, the Court denies AFM's motion [13].

Dated:  January 27, 2023

Entered:

_____
John Robert Blakey
United States District Judge