IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TOWER CROSSING CONDOMINIUM ASSOCIATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> AFFILIATED FM INSURANCE COMPANY, <br><br> Defendant. | Case No. 21 C 6228 <br><br> Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

Tower Crossing Condominium Association, Inc. ("Tower Crossing") brought this action challenging Affiliated FM Insurance Company's ("Affiliated FM") denial of insurance coverage for storm damage to its property. Before the Court there are the parties' cross-motions for summary judgment. (*See* Dkts. 124, 129). For the reasons discussed below, Affiliated FM's motion for summary judgment is granted and Tower Crossing's motion for partial summary judgment is denied.

## BACKGROUND[1]

Tower Crossing manages a 27-building condominium complex located at 1992 Patriot Boulevard in Glenview, Illinois (the "Property"). (Def.'s Resp. SOF ("DRSOF"), ¶ 1, Dkt. 137) Tower Crossing claims—and Affiliated FM disputes—that on July 2, 2019, a storm hit Glenview and the Property sustained damage to its roofs due to wind and hail. (*Id.* ¶ 2).

From May 1, 2018, to May 1, 2020, Tower Crossing insured the Property through an All Risk Coverage insurance policy ("Policy") issued by Affiliated FM. (*Id.* ¶ 4). Relevant here, the

---

[1] The facts are taken from the parties' Local Rule 56.1 Statements and are undisputed, unless otherwise noted.

1

Policy required Tower Crossing to submit a "**signed and sworn proof of loss** . . . within 90 days after the loss, unless that time is extended in writing by [Affiliated FM]." (Zefutie Decl., Ex. 3, at 1476, Dkt. 126-4) (emphasis added). The Policy also required the proof of loss to "state the knowledge and belief of [Tower Crossing]" regarding five enumerated categories of information, including the time and origin of the loss and the actual cash value and replacement value of each item associated with the loss. (*Id.*). In addition, the Policy included a statute of limitations, requiring all lawsuits related to the Policy to be initiated within two years after the date when the loss occurred, which may be tolled "by the number of days between the date the proof of loss was filed until the date the claim is denied in whole or in part." (Policy, at 1495).

Affiliated FM did not receive a proof of loss within 90 days after the storm, but on August 21, 2019, Tower Crossing did report an insurance claim for storm damage. (DRSOF, ¶¶ 11, 15). On July 1, 2021, or a day before the suit limitations period was to expire, Affiliated FM extended the deadline for Tower Crossing to file a lawsuit related to the storm to October 2, 2021. (*Id.* ¶ 14).

Prior to that expiration date, Tower Crossing—through its adjuster, Ron Cooper—prepared a proof of loss that it never submitted to Affiliated FM ("Unsubmitted POL"). (*Id.* ¶¶ 21-22). On September 30, 2021, Tower Crossing's President, Kenneth Freedman, signed and notarized the Unsubmitted POL, which is entitled "PARTIAL SWORN STATEMENT IN PROOF OF LOSS," in front of notary public Charles Alexander signifying that he swore to the contents of the document. (Zefutie Decl., Ex. 16, at 1561-1562, Dkt. 126-17). The Unsubmitted POL averred a total replacement value of over $2.9 million. (DRSOF ¶ 21).

Sometime thereafter, Tower Crossing prepared another Partial Sworn Statement in Proof of Loss that stated a valuation of loss of over $4.3 million ("POL")—approximately $1.4 million more than the Unsubmitted POL. (*Id.* ¶¶ 16-17). Tower Crossing, however, admits that it did not

2

swear to the POL's contents in front of a notary, rather it "attached" Freedman's "sworn signature [from the Unsubmitted POL] . . . to the POL" and submitted that document to Affiliated FM on October 1, 2021. (*Id.* ¶¶ 16, 18, 29).

On October 29, 2021, Affiliated FM "reject[ed]" the POL indicating that its estimate of the alleged damages is $203,982.19 but did not make a final coverage decision on Tower Crossing's claim. (*Id.* ¶¶ 38-39; Zefutie Decl., Ex. 4, at 1498-1499, Dkt. 126-5). In apparent disagreement with that response, Tower Crossing initiated this action on November 19, 2021, alleging Affiliated FM's failure to pay out on the insurance claim amounted to a breach of contract (Count I) and a violation of Illinois' bad faith statute, 215 ILCS 5/155 (Count II). (*See* Compl., Dkt. 1). After protracted discovery, each side seeks summary judgment. These motions are fully briefed and ripe for disposition.

## **LEGAL STANDARD**

Summary judgment is proper when there is no genuine dispute as to a material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Med. Protective Co. of Fort Wayne, Ind. v. Am. Int'l Specialty Lines Ins. Co.*, 990 F.3d 1003, 1008 (7th Cir. 2021). Summary judgment "requires a non-moving party to respond to the moving party's properly supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted). The parties genuinely dispute a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

3

**DISCUSSION**

In its motion for summary judgment, Affiliated FM argues that Tower Crossing's claims fail because Tower Crossing did not meet all the Policy's preconditions to coverage prior to filing suit. (Def.'s Mem. Supp., at 1636, Dkt. 130). Specifically, Affiliated FM contends that because Tower Crossing did not notarize the POL, it did not proffer a "signed and sworn" proof of loss as required to toll the statute of limitations under the Policy. (*Id.*). As a result, Affiliated FM maintains that Tower Crossing's claims are barred under the Policy's two-year statute of limitations. (*Id.* at 1640-1643). Tower Crossing concedes that its agent signed and notarized the Unsubmitted POL but asserts that because the notarized signature was later transferred to the POL, its submission is "sworn" as the Policy requires. (Pl.'s Opp'n, at 1964, Dkt. 132). Having considered the arguments and applicable legal authority, the Court finds the position of Affiliated FM more persuasive.

Section 143.1 of the Illinois Insurance Code provides that "[w]henever any policy or contract for insurance . . . contains a provision limiting the period within which the insured may bring suit, the running of such period is tolled from the date proof of loss is filed, **in whatever form is required by the policy**, until the date the claim is denied in whole or in part." 215 ILCS 5/143.1 (emphasis added). The purpose of section 143.1 is "to prevent an insurance company from sitting on a claim, allowing the limitation period to run and depriving the plaintiff of the opportunity to litigate her claim in court." *Burress-Taylor v. Am. Sec. Ins. Co.*, 980 N.E.2d 679, 685 (Ill. App. Ct. 2012).

There is a distinction between filing information giving the insurer notice of loss and the formal filing of a proof of loss for purposes of determining whether an insured may invoke the tolling provision of § 143.1. *See Davis v. Allstate Ins. Co.*, 498 N.E.2d 246, 247-248 (Ill. App. Ct.

1986); *Harvey Fruit Mkt. v. Hartford Ins. Co.*, 691 N.E.2d 71, 73 (Ill. App. Ct. 1998). Although the term "proof of loss" is not defined in the statute, it is "generally accepted" that:

> The purpose of a provision for proof of loss is to afford the insurer an adequate opportunity for investigation, to prevent fraud and imposition upon it, and to enable it to form an intelligent estimate of its rights and liabilities before it is obliged to pay. Its object is to furnish the insurer with the particulars of the loss and all data necessary to determine its liability and the amount thereof.

*State Farm Mut. Auto. Ins. Co. v. Guerrero*, No. 1-15-1079, 2015 WL 9594070, at *6 (Ill. App. Ct. 2015) (quoting CYCLOPEDIA OF INSURANCE LAW (2d ed.) § 49:373, p. 15); *see also,* 5 NEW APPLEMAN ON INSURANCE LAW LIBRARY EDITION § 53.01[9][d][i] (2012) ("The proof of loss is a legal document whereby the insured swears under penalty of perjury that the claim it is submitting to the insurer is accurate and proper.").

Under Illinois law, "[i]t is possible for the filing of information with an insurance company to constitute a proof of loss and to start the tolling period, if the policy does not require a particular form of proof of loss." *Hines v. Allstate Ins. Co.*, 698 N.E.2d 1120, 1124 (Ill. App. Ct. 1998). Here, it is undisputed that the Policy requires a *particular* form of proof of loss to start the tolling period, but the parties have opposite views on whether Tower Crossing's submitted POL complies with the Policy requirements. To resolve this question, the Court must interpret the provisions of the Policy and apply that interpretation to the specific facts of this case.

In Illinois, "[a]n insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Windridge of Naperville Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 932 F.3d 1035, 1039 (7th Cir. 2019) (quoting *Hobbs v. Hartford Ins. Co. of the Midwest*, 823 N.E.2d 561, 564 (Ill. 2005)). The goal is "to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Thounsavath v. State Farm Mut. Auto. Ins. Co.*, 104 N.E.3d 1239, 1244 (Ill. 2018).

5

"Undefined terms will be given their plain, ordinary, and popular meaning; *i.e.*, they will be construed with reference to the average, ordinary, normal, reasonable person." *Sproull v. State Farm Fire & Cas. Co.*, 184 N.E.3d 203, 209 (Ill. 2021). Courts must avoid adopting interpretations that "rest[] on gossamer distinctions that the average person, for whom the policy is written, cannot be expected to understand." *Id.* (quotes omitted).

If the policy language is unambiguous, its terms must be applied "as written." *See Rubloff Algonquin Portfolio, L.L.C. v. Kohl's Illinois, Inc.*, 2012 WL 3156890, at *1 (N.D. Ill. 2012). Ambiguity exists if the language of the policy is subject to more than one reasonable interpretation as applied to the dispute before the court. *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1003-1004 (Ill. 2010). But disagreement between the parties as to meaning does not itself make the policy ambiguous. *Id.* at 1004. Nor does the fact that a term is not defined by a policy render it ambiguous. *Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd.*, 860 N.E.2d 280, 286 (Ill. 2006). "A court will consider only reasonable interpretations of policy language and will not strain to find an ambiguity." *Hae Sun Kang v. Travco Ins. Co.*, No. 24 CV 3391, 2025 WL 1001728, at *3 (N.D. Ill. Apr. 3, 2025) (citing *Rich v. Principal Life Ins. Co.*, 875 N.E.2d 1082, 1090 (Ill. 2007)).

However, if the policy language is susceptible to more than one reasonable meaning, it is considered ambiguous and will be construed strictly against the insurer. *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 491 (Ill. 2001). "Indeed, [w]here competing reasonable interpretations of a policy exist, a court is not permitted to choose which interpretation it will follow. Rather, in such circumstances, the court must construe the policy in favor of the insured and against the insurer that drafted the policy." *Sproull*, 184 N.E.3d at 209 (citation omitted). "Additionally, [Illinois courts] construe the policy as a whole, giving effect to each provision where possible

6

because [courts] must assume that the provision was intended to serve a purpose." *Acuity v. M/I Homes of Chi., LLC*, 234 N.E.3d 97, 105 (Ill. 2023).

With those principles in mind, the Court examines the Policy's relevant provisions. Under the section titled "REQUIREMENTS IN CASE OF LOSS," the Policy states that the insured must "[g]ive a **signed and sworn** proof of loss to the Company . . ." and provides time limits for such a proffer, the ability to extend the time limit, and five enumerated categories of information to be included in the proof of loss. (Policy, at 1476) (emphasis added). The parties do not dispute that the Policy's use of "signed" requires a signature but they offer differing interpretations of what is meant by the term "sworn."

Affiliated FM contends that the Policy's use of "sworn" references notarization of the POL in question, not some other document. (*See* Def.'s Mem. Supp., at 1636). Albeit in an unclear manner, Tower Crossing argues that because its agent signed and notarized the Unsubmitted POL, and that notarized signature was later transferred to the POL it submitted to Affiliated FM, the POL is "sworn" for purposes of the Policy. (Pl.'s Opp'n, at 1964). In other words, the parties agree that the "sworn" proof of loss requires the insured to swear under oath in front of a notary, but Tower Crossing argues that it abided by the Policy because it swore to the Unsubmitted POL "[b]efore the calculations were updated," and it transferred that sworn signature to the POL it did submit. (*Id.*). Not so.

One Illinois appellate court has interpreted "sworn" to mean "notarized" in substantially the same context. *Ornoff v. Westfield Nat. Ins. Co.*, 2013 WL 3972162, at *4 (Ill. App. Ct. 2013) ("We read the Duties section as requiring a proof of loss to be 'signed' by the insured and 'sworn,' *i.e.*, notarized, and to contain the specified types of information."). Similarly, Black's Law Dictionary defines "swear" to mean "[t]o administer an oath (to a person)" or "[t]o take an oath,"

7

and defines "sworn statement" as "[a] statement given under oath; an affidavit." SWEAR, Black's Law Dictionary (12th ed. 2024); STATEMENT, Black's Law Dictionary (12th ed. 2024).[2] It therefore follows that a "sworn proof of loss" under the Policy is the equivalent of a proof of loss "given under oath," like a notarized "affidavit."

For example, in *Ornoff*, the Illinois appellate court affirmed the trial court's decision that the tolling period for the statute of limitations of the insureds' claims began when they submitted a signed and sworn proof of loss as required by their insurance policy and not when they submitted earlier information that was not compliant. *Ornoff*, 2013 WL 3972162, at *1. In that case, the insureds submitted two proofs of loss—an unsworn first submission and a second submission sworn under oath. *Id.* at *12. The *Ornoff* court rejected the insureds' argument that the two submissions were the same, reasoning that "[t]he requirement that the insured swear under oath for a proof of loss is a significant one." *Id.* "One purpose of the proof of loss is to obtain a statement of the loss from the insured under oath such as will subsequently bind the insured and protect against the imposition of fraud." *Id.* (quoting *Barnes v. State Farm Fire & Cas. Co.*, 623 F.Supp 538, 540 (E.D. Mich. 1985)). Because the insureds failed to swear their first submission under oath, the court found that the statute of limitations for their claims was tolled only upon submission of the second proof of loss. *Id.* at *12-13.[3]

Here, it is undisputed that Tower Crossing did not swear to the POL under oath or otherwise notarize that specific document. Further, the parties agree that Tower Crossing signed and swore

---

[2] "The Illinois Supreme Court considers Black's Law Dictionary a valid source for determining the ordinary meaning of undefined terms." *Pastors Protecting Youth v. Madigan*, 237 F.Supp.3d 746, 749 n.2 (N.D. Ill. 2017) (citing *People v. Petrenko*, 931 N.E.2d 1198, 1213 (Ill. 2010)).

[3] Another Illinois appellate court, for example, found that a policy holder's claim failed on timeliness grounds where her insurance policy required a sworn proof of loss, and the policy holder testified that "she did not remember whether she signed the proof of loss statement under oath and the statement itself d[id] not include an attestation that it was signed under oath." *Morris v. Scottsdale Ins. Co.*, No. 3-11-0587, 2012 WL 7006567 at *5 (Ill. App. Ct. 2012).

to the contents of the Unsubmitted POL under oath, and then later attached that same sworn signature to the POL in question, which contained approximately a $1.4 million difference in the valuation of Tower Crossing's insurance claim. (DRSOF ¶¶ 21-22, 28-30). Put differently, Tower Crossing swore in front of a notary that the Unsubmitted POL's $2.9 million valuation was accurate and proper but did not do the same for the POL's $4.3 million valuation. Similar to *Ornoff*, the Court finds that Tower Crossing did not swear to the POL under oath, and as a result, failed to submit a "sworn" proof of loss in the form required by the Policy. Consequently, the statute of limitations on Tower Crossing's claim was not tolled upon its submission of the POL on October 1, 2021.

Tower Crossing argues that *McDonald v. Am. Family Mut. Ins. Co.*, 622 N.E.2d 63, 65 (Ill. App. Ct. 1993), "forecloses [Affiliated FM]'s arguments regarding the POL" because the court there found that "the insured's second submission of a good faith estimate satisfied the sworn proof of loss requirement." (Pl.'s Opp'n, at 1965-1966) (quotes omitted). However, in that case, the policy in question only required the submission of a proof of loss "within 60 days after [the insurer] request[s]," and the insurer "never did request a proof of loss under the policy before the time the claim was denied." *McDonald*, 622 N.E.2d at 65. Due to the insurer's omission, the court found that "the limitation period could be tolled" by the insured's good faith submission of a proof of loss. *Id.* In other words, the insured upheld its obligations in *McDonald,* but the insurer did not. That case is distinguishable from the present situation because the Policy here does not require Affiliated FM to request a proof of loss; instead, it requires Tower Crossing to submit a compliant proof of loss within 90 days after the loss occurs, which it failed to do. Therefore, *McDonald* does not alter the Court's conclusion that submitting a noncompliant POL did not start the tolling period. *See Hines*, 698 N.E.2d at 1124 (stating that the "filing of information with an insurance company

9

[may] constitute a proof of loss and . . . start the tolling period," but only "if the policy does not require a particular form of proof of loss").

Under the undisputed facts before the Court, the failure to toll the statute of limitations is fatal to Tower Crossing's claims. The Policy required all coverage lawsuits to be initiated within two years after the date the loss occurred, *i.e.,* by July 2, 2021. (Policy, at 1495). Affiliated FM extended the statute of limitations to October 2, 2021. (DRSOF ¶ 14). Although submission of a compliant proof of loss would have tolled the statute of limitations on Tower Crossing's claims, for the reasons already discussed, the POL submitted to Affiliated FM did not. As such, the statute of limitations on Tower Crossing's claims continued to run notwithstanding the October 1, 2021 submission. By the time Tower Crossings filed this complaint on November 19, 2021, the two years had run.

In sum, the Court finds that because Tower Crossing did not submit a proof of loss in the manner required by the Policy, the statute of limitations for Tower Crossing's Policy-related claims was not tolled under 215 ILCS 5/143, and in fact, expired on October 2, 2021, or over a month before the present suit was filed. The complaint is thus time-barred. Accordingly, Affiliated FM's motion for summary judgment is granted and Tower Crossing's motion for partial summary judgment is denied.[4]

---

[4] On a final note, the parties raise other arguments in their briefs related to Tower Crossing's claims but because the Court finds that the statute of limitations expired before Tower Crossing filed suit, it need not address those contentions. Likewise, Tower Crossing's *Daubert* motion (Dkt. 127) is now moot.

## **CONCLUSION**

For all the foregoing reasons, the Court grants summary judgment in favor of Defendant Affiliated FM Insurance Company and against Plaintiff Tower Crossing Condominium Association, Inc.

**DATED**: November 3, 2025              **ENTERED**:

*LaShonda A. Hunt*
LaShonda A. Hunt
United States District Judge